1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

9   Armando Valles, et al.,                          )          CV-08-00009-TUC-FRZ (JCG)
                                                     )
10          Plaintiff,                               )     **REPORT & RECOMMENDATION**
                                                     )     **RE: MOTION FOR SUMMARY**
11   vs.                                             )     **JUDGMENT BY DEFENDANTS**
                                                     )     **HOSACK AND DESERT VISTA**
12                                                   )     **ENGINEERING**
     Pima County, et al.,                            )
13                                                   )
            Defendant.                               )
14                                                   )
     _____        )
15

16          Pending before the Court is a Motion for Summary Judgment filed by Defendants

17   Thomas Hosack ("Hosack") and Desert Vista Engineering, LLC ("Desert Vista") on

18   December 3, 2008.  (Doc. No. 152.)  Plaintiff filed a response on December 22, 2008 (Doc.

19   No. 163) and Defendants timely replied.  (Doc. No. 166.)

20          Pursuant to the Rules of Practice in this Court, the matter was assigned to Magistrate

21   Judge Guerin for a Report and Recommendation.  (Doc. No. 37.)  The Magistrate Judge

22   recommends that the District Court, after its independent review of the record, enter an order

23   granting Defendants Hosack and Desert Vista's Motion for Summary Judgment.

24                    **FACTUAL AND PROCEDURAL BACKGROUND**

25          Plaintiffs initiated this action against fourteen Defendants on January 3, 2008.  (Doc.

26   No. 1.)  Plaintiffs were granted leave to amend their complaint and filed their First Amended

27   Complaint on March 11, 2008.  (Doc. No. 33.)  Numerous defendants filed motions to

28   dismiss Plaintiffs' First Amended Complaint. While those motions were pending, the Court

1    granted Plaintiffs leave to file their Second Amended Complaint, which Plaintiffs filed on
2    August 11, 2008.  (Doc. Nos. 126, 127.)  On August 29, 2008, the Court dismissed two
3    Defendants – West Speedway Partners, LLC and The Villas at Hacienda del Sol, Inc.  (Doc.
4    No. 130.)  On September 8, 2008, the Court dismissed the remaining motions to dismiss as
5    moot in light of the filing of Plaintiffs' Second Amended Complaint.  (Doc. No. 133.)  The
6    Court further noted that "this case may be streamlined by allowing Plaintiffs to file a Third
7    Amended Complaint."  (*Id*.)  Plaintiffs filed their Third Amended Complaint on October 24,
8    2008.  (Doc. No. 136.)

9         Plaintiffs Third Amended Complaint alleges claims against Defendants Pima County,
10   David A. Mason ("Mason"), Hosack, Desert Vista, M.L. Parkhurst Construction, LLC
11   ("Parkhurst"), Richard A. Sack ("Sack") and Roy H. Long Realty Company, Inc. ("Long
12   Realty").  Motions to dismiss Plaintiffs' Third Amended Complaint have been filed by
13   Defendants Parkhurst, Mason, Sack and Long Realty.  (Doc. Nos. 137, 149 and 151.)
14   Defendants Hosack and Desert Vista have filed a Motion for Summary Judgment.  (Doc. No.
15   152.) Defendant Pima County has answered the Third Amended Complaint. (Doc. No. 150.)[1]

16        Defendants Hosack and Desert Vista do not dispute the facts alleged in Plaintiffs'
17   Third Amended Complaint - at least not for purposes of their Motion for Summary Judgment.
18   The relevant facts as alleged by Plaintiffs are as follows: West Speedway Partners, LLC
19   ("WSP") was a property development company that sought to subdivide and develop
20   property known as The Enclave at Gates Pass ("the Enclave").  (Doc. No. 136, ¶¶ 21-23, 98.)
21    Hosack and Desert Vista were hired prior to the start of development to design tentative and
22   final plats for the subdivision.  (DSOF 4; PSOF 1.)[2]  Plaintiffs purchased lots in the Enclave.

23

24       [1] The pending Motions to Dismiss and Motion for Summary Judgment relating to
     Plaintiffs' Third Amended Complaint present similar arguments in favor of dismissal and the
25   parties have incorporated each others' pleadings by reference.  Accordingly, the Court hereby
     incorporates by reference its Report and Recommendations concerning the other pending
26   Motions.

27       [2] Citation to the parties' statements of facts are abbreviated herein as follows: Defendant
     Hosack and Desert Vista's Statement of Facts is abbreviated as "DSOF." (Doc. No. 153.)
28   Plaintiffs' Response to Defendants Hosack and Desert Vista's Statement of Facts is abbreviated
     as "PSOF."  (Doc. No. 164.)  Defendants Hosack and Desert Vista's Controverting and

1    (DSOF 1; PSOF 1.)   Improvements to the infrastructure of the Enclave were never

2    completed.   (DSOF 2; PSOF 1.)   Plaintiffs allege that completion of the Enclave

3    development has been prevented by the fact that WSP filed for bankruptcy and stopped

4    working, and because of alleged mistakes by Pima County and various contractors. (DSOF

5    3; PSOF 1.)

6        In their Third Amended Complaint, Plaintiffs allege a state law negligence claim

7    against Hosack and Desert Vista.  According to Plaintiffs, Hosack, a professional engineer,

8    owed a duty to Plaintiffs as "the owners/users of the resulting product of his work" and as

9    a matter of public policy requiring Hosack to "design the subdivision improvements to

10   conform to the requirements of Pima County and the utility companies." (Doc. No. 136, ¶¶

11   14, 105.)  Plaintiffs also allege that they fall within the class of persons whom the Arizona

12   state licensing requirements for engineers were created to protect. (*Id.* at ¶ 106.)  Plaintiffs

13   allege that Hosack breached his duties to Plaintiffs when he "erroneously described the same

14   benchmark on the Tentative Plat (from which construction was initiated) and the Final Plat,

15   as having two differing elevations without explanation and without providing spot check

16   elevations as a precaution." (*Id.* at ¶ 107.)  Plaintiffs further allege that Hosack breached his

17   duties to Plaintiffs when he failed to certify the grade prior to the installation of water and

18   electrical lines.  (*Id.* at ¶ 107.)  In their Third Amended Complaint, Plaintiffs allege that they

19   had suffered "monetary damages and actual physical damage to their properties" as a result

20   of Hosack's breach. (Doc. No. 136, ¶ 113.)  In their Statement of Facts, Plaintiffs allege that

21   they have also suffered damages including "destruction of the Plaintiffs' utility lines,

22   substantial erosion, the death and destruction of plant life, as well as the improper cuts and

23   grades." (PSOF 2.)   Plaintiffs allege that Hosack is an employee of Desert Vista and

24   therefore Desert Vista is vicariously liable for Hosack's alleged negligence. (Doc. No. 136,

25   ¶ 104.)

26

27   _____

28   Supplemental Statement of Facts is abbreviated as "DCSOF."  (Doc. No. 167.)

1    On December 3, 2008, Hosack and Desert Vista moved for summary judgment on the

2    negligence claim alleged against them pursuant to Rule 56, Fed. R. Civ. P.  No oral argument

3    was heard on the motion.  *See Mahon v. Credit Bureau of Placer County, Inc.,* 171 F.3d

4    1197, 1200 (9th Cir. 1999) (explaining that if the parties provided the district court with

5    complete memorandum of law and evidence in support of their positions, ordinarily oral

6    argument would not be required).

7                              **STANDARD OF REVIEW**

8    In deciding a motion for summary judgment, the Court views the evidence and all

9    reasonable inferences therefrom in the light most favorable to the party opposing the motion.

10   *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d

11   202 (1986); *Eisenberg v. Insurance Co. of North America*, 815 F.2d 1285, 1289 (9th Cir.

12   1987).

13   Summary judgment is appropriate if the pleadings and supporting documents "show

14   that there is no genuine issue as to any material fact and that the moving party is entitled to

15   a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317,

16   322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).  Material facts are those "that might

17   affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S.

18   Ct. at 2510.  A genuine issue exists if "the evidence is such that a reasonable jury could

19   return a verdict for the nonmoving party." *Id*.

20   A party moving for summary judgment initially must demonstrate the absence of a

21   genuine issue of material fact. *Celotex*, 477 U.S. at 325, 106 S. Ct. at 2553-54.  The moving

22   party merely needs to point out to the Court the absence of evidence supporting its

23   opponent's claim; it does not need to disprove its opponent's claim. *Id.*; *see also* Fed. R. Civ.

24   P. 56(c).  If a moving party has made this showing, the nonmoving party "may not rest upon

25   the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific

26   facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  *See also*

27   *Anderson*, 477 U.S. at 256, 106 S. Ct. at 2514; *Brinson v. Linda Rose Joint Venture*, 53 F.3d

28   1044, 1049 (9th Cir. 1995).

1    The ultimate inquiry is "whether the evidence presents a sufficient disagreement to
2    require submission to a jury or whether it is so one-sided that one party must prevail as a
3    matter of law."   *Anderson*, 477 U.S. at 251, 106 S. Ct. at 2512.

4                                    **DISCUSSION**

5    Defendants Hosack and Desert Vista contend that Plaintiffs' negligence claim against
6    them is barred by the economic loss doctrine.  Defendants also seek an award of sanctions
7    against Plaintiffs pursuant to A.R.S. § 12-349.

8    **A.    Arizona's economic loss doctrine bars Plaintiffs' recovery in this case**.

9    The economic loss rule, when applicable, bars a party from recovering economic
10   damages in tort unless accompanied by physical harm, either in the form of personal injury
11   or secondary property damage.  *See Carstens v. City of Phoenix*, 206 Ariz. 123, 126 (App.
12   2003).   In general, the rule prevents plaintiffs from converting contract claims into tort
13   claims.  Where a plaintiff alleges purely economic losses, the damages sound in contract, and
14   tort recoveries are prohibited by the economic loss rule.

15   The economic loss rule has received limited application in Arizona courts.  The
16   Arizona courts have repeatedly recognized the economic loss rule in construction defect
17   cases, where the plaintiff has sustained purely economic loss as a result of faulty
18   construction.  *See generally Woodward v. Chirco Constr. Co.*, 687 P.2d 1269 (Ariz. 1984);
19   *Colberg v. Rellinger*, 770 P.2d 346 (Ariz. App. 1988); *Hayden Business Center*
20   *Condominiums Ass'n v. Pegasus Development Corp.*, 105 P.3d 157 (Ariz. App. 2005),
21   *overruled on other grounds in Lofts at Fillmore Condominium Ass'n v. Reliance Commercial*
22   *Const., Inc.*, 190 P.3d 733 (Ariz. 2008); *Matusik v. Dorn*, 756 P.2d 346 (Ariz. App. 1988);
23   and *Nastri v. Woods Bros. Homes, Inc.*, 690 P.2d 158 (Ariz. App. 1984).  The Arizona courts
24   have also recognized the economic loss rule as one factor to consider in determining whether
25   a claim arising from a defective product should be treated as a contract or tort claim.  *See Salt*
26   *River Project Agr. Imp. and Power Dist. v. Westinghouse Elec. Corp.*, 694 P.2d 198 (Ariz.
27   1984), *abrogated on other grounds by Phelps v. Firebird Raceway, Inc.*, 111 P.3d 1003, 454
28   (Ariz. 2005).

1    Other than construction and product defect cases, however, the Arizona courts have

2    not applied the economic loss rule as a bar to the recovery of economic damages in tort cases.

3    To the contrary, Arizona courts have issued numerous decisions permitting the recovery of

4    purely economic losses in tort actions.  *See generally Paradigm Ins. Co. v. Langerman Law*

5    *Offices, P.A.*, 24 P.3d 593 (Ariz. 2001); *St. Joseph's Hosp. and Medical Center v. Reserve*

6    *Life Ins. Co.*, 742 P.2d 808 (Ariz. 1987); *Donnelly Constr. Co. v. Oberg/Hunt/Gilleland*, 677

7    P.2d 1292 (Ariz. 1984); *Kuehn v. Stanley*, 91 P.3d 346 (Ariz. App. 2004); *Luce v. State Title*

8    *Agency, Inc.*, 950 P.2d 159 (Ariz. App. 1997); and *Standard Chartered PLC v. Price*

9    *Waterhouse*, 945 P.2d 317 (Ariz. App. 1996).

10   Federal courts have construed Arizona's economic loss rule more broadly than the

11   Arizona courts.  Since 1995, Arizona district courts have issued at least thirteen decisions

12   applying the economic loss doctrine to bar recovery in tort claims including negligent

13   misrepresentation, breach of fiduciary duty and conversion.  *See Evans v. Singer*, 518

14   F.Supp.2d 1134, 1143-44 (D. Ariz. 2007) (collecting cases).    However, in situations

15   "'[w]here the state's highest court has not decided an issue, the task of the federal courts is

16   to predict how the state high court would resolve it.' " *Id.* at 1139-40 (citing *Ticknor v.*

17   *Choice Hotels Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir.2001)).  "In assessing how a state's

18   highest court would resolve a state law question - absent controlling state authority - federal

19   courts look to existing state law *without predicting potential changes* in that law." *Id*.

20   (citation omitted).  No  reported Arizona state appellate court decision has ever applied, or

21   even discussed, the economic loss rule outside of the areas of products liability or

22   construction defects.  *Id*. at 1142.  Accordingly, the issue before the Court in this case is

23   whether the negligence claim alleged by Plaintiffs against Hosack and Desert Vista is

24   "sufficiently similar to those situations where the Arizona Supreme Court has applied the rule

25   to bar recovery of economic losses in tort." *Id*. at 1145.

26   The "construction defect" cases in which Arizona courts first applied the economic

27   loss doctrine involved homeowners seeking recovery in tort against the builders of their

28   homes for economic losses attributable to defective construction.  *See, e.g., Woodward v.*

1    *Chirco Constr. Co.*, 687 P.2d 1269, 1270 (Ariz. 1984) (homeowners sued the builder of their

2    house for both breach of the implied warranty of workmanlike performance and habitability

3    and negligence after large cracks developed in the house walls and foundation, the fireplace

4    separated from the wall, a family room wall shifted forward, the kitchen ceiling began to

5    bow, and the floor warped).  The rationale for applying the economic loss rule to construction

6    defect cases has been as follows:

7          [C]ontract law and tort law each protect distinct interests. Generally, contract
           law enforces the expectancy interests between contracting parties and provides
8          redress for parties who fail to receive the benefit of their bargain. . . .  Its focus,
           therefore, is on standards of quality as defined by the parties in their contract.
9          . . . Tort law, in contrast, seeks to protect the public from harm to person or
           property. . . .   To this end, it evaluates the objective reasonableness of a
10         person's conduct and compensates victims for their actual harm resulting from
           that conduct. . . . The economic loss rule thus "serves to distinguish between
11         tort, or duty-based recovery, and contract, or promise-based recovery, and
           clarifies that economic losses cannot be recovered under a tort theory."
12         *Calloway v. City of Reno*, 116 Nev. 250, 993 P.2d 1259, 1263 (2000).  In the
           construction defect setting, "[i]f a house causes economic disappointment by
13         not meeting a purchaser's expectations, the resulting failure to receive the
           benefit of the bargain is a core concern of contract, not tort, law.

14   *Carstens*, 75 P.3d at 1084 (citing Recovery of Economic Loss in Tort for Construction

15   Defects: A Critical Analysis, 40 S.C. L.Rev. 891, 895-96 (1989)).

16         This case differs from a traditional construction defect case in that Plaintiffs are not

17   seeking relief against the Enclave "builder," WSP (which filed for bankruptcy and was

18   previously dismissed from this action).[3]    However, this case does arise out of the

19   Defendants' alleged failure to complete a housing subdivision, which makes the construction

20   defect case law relevant.  In addition, Arizona courts have applied the economic loss rule in

21   construction cases brought by plaintiffs against parties to the construction other than the

22   builder.  *See, e.g., Colberg*, 770 P.2d at 348 (applying economic loss rule to negligence claim

23   against construction supervisor).  In the present case, the construction and sale of the Enclave

24   lots was controlled by various contracts between the parties.  WSP contracted with Hosack

25

26         [3] The fact that Plaintiffs are unable to pursue a contract claim against WSP is not relevant
     to the determination of whether Plaintiff may initiate a tort action against Hosack or Desert
27   Vista.  *See Carstens*, 75 P.3d at 1085 (economic loss rule applies even when the plaintiff has no
     contract claim against the specific defendant and application of the rule would therefore leave
28   the plaintiff without a remedy).

1   and Desert Vista for engineering of the tentative and final plats for the subdivision.

2   Plaintiffs, in turn, contracted with WSP for purchase of their lots.  Plaintiffs now allege that

3   they have not received the "benefit of the bargain," in that homes cannot be constructed on

4   the lots. The harm of which Plaintiffs complain is economic disappointment: Plaintiffs allege

5   a defect in the quality of the product that they purchased, not a harm to their persons or some

6   other property. This "standard of quality must be defined by reference to that which the

7   parties have agreed upon"; in other words, the claim sounds in contract.  *Nastri*, 690 P.2d at

8   164 (citing *Crowder v. Vandendeale*, 564 S.W.2d 879 (Mo. 1978)).

9        Plaintiffs contend that they have alleged damage to property other than the lots

10   themselves, specifically "destruction of the Plaintiffs' utility lines, substantial erosion, the

11   death and destruction of plant life, as well as the improper cuts and grades."  (PSOF 2.)

12   These alleged damages are not the "harm to person or property" that tort law was designed

13   to protect.  *Carstens*, 75 P.3d at 1084.  "[A home buyer] can ... seek to recover in tort for

14   injuries sustained due to the contractor's failure to construct the home as a reasonable

15   contractor would.  For example, if a fireplace collapses, the purchaser can sue in contract for

16   the cost of remedying the structural defects and sue in tort for damage to personal property

17   or personal injury caused by the collapse."  *Woodward*, 687 P.2d at 1271.  The utility lines,

18   cuts and grades at issue in this case are part of the infrastructure of the subdivision, not the

19   individual property of the Plaintiffs.  Landscaping is not considered personal property

20   separate from the real property at issue.  *See Hayden Business Center Condominiums Ass'n*

21   *v. Pegasus Development Corp.*, 105 P.3d 157 (Ariz. App. 2005), *overruled on other grounds*

22   *in Lofts at Fillmore Condominium Ass'n v. Reliance Commercial Const., Inc.*, 190 P.3d 733

23   (Ariz. 2008); *see also Salt River Project*, 694 P.2d at 208 (holding that a product defect

24   which causes damage to the product itself as well as losses for shutdown, start-up, testing

25   costs, and/or loss of profits were incurred does not sound in tort).  Plaintiffs are not seeking

26   tort-based damages in this case.

27        Plaintiffs contend that their case is distinguishable from the construction defect cases

28   in which Arizona courts apply the economic loss rule.  According to Plaintiffs, their case is

1  akin to *Donnelly Constr. Co. v. Oberg/Hunt/Gilleland*, 677 P.2d 1292 (Ariz. 1984).  In
2  *Donnelly*, a school contracted with an architect for design of the school, and with a contractor
3  for construction of the school.  The architect produced negligent designs which caused the
4  contractor to incur economic damages during construction, and the contractor sued the
5  architect for negligence and negligent misrepresentation.   The architect contended that
6  without privity of contract, it owed no duty to the contractor and could not be liable in tort.
7  The Arizona Supreme Court disagreed, and held that "design professionals are liable for
8  foreseeable injuries to foreseeable victims which proximately result from their negligent
9  performance of their professional services." *Id*. at 1296.

10  It is unclear whether *Donnelly* has any precedential value.  In *Gipson v. Kasey*, 214
11  Ariz. 141, 150 P.3d 228 (Ariz. 2007), the Arizona Supreme Court overruled *Donnelly* to the
12  extent that *Donnelly* held that foreseeability is a factor in determining whether a duty exists.[4]
13  Regardless, *Donnelly* is not persuasive in this case.  First, the economic loss rule was not at
14  issue in *Donnelly* and was never mentioned.  Second, to the extent that *Donnelly* permits an
15  award of purely economic damages in a tort claim, it does so under circumstances that do not
16  apply in this case.  As the *Carstens* court stated, "the *Donnelly* court's allowance of the
17  negligence claim against the architects hinged on the special situation in which the
18  contractor, although not in privity of contract with the architects, had to rely directly upon
19  their work." *Carstens,* 75 P.3d at 1087.  The court noted "Of course, the property owner in
20  *Donnelly* had entered into contract with both the contractor and the architects, which
21  contemplated that the contractor would rely upon the architects' services." *Id.* at 1087, nt.
22  4.  No such special situation exists in this case.  Although Hosack engineered the plats for
23  the Enclave, and Plaintiffs eventually purchased lots in the Enclave, there was no
24  intermediate contract in place contemplating that Plaintiffs would rely on Hosack's
25  engineering in the performance of their own duties.  Moreover, Plaintiffs have alleged that
26  they purchased their lots in reliance on representations made by Mason and Sack that

27
28  [4] Plaintiffs cited to *Donnelly* without reference to the fact that the case has been overruled.

- 9 -

subdivision improvements were substantially complete.  (Doc. No. 136 at ¶ 32, 33.)  Given these allegations, Plaintiffs could not be considered to have been in the "care" of Hosack and Desert Vista in the same way that the *Donnelly* contractor was in the care of the architects. *See Carstens*, 75 P.3d at 1087 (holding that homebuyers who relied on seller's representations that all material defects in home had been disclosed could not be considered to have been in the "care" of city inspectors who inspected the home for latent defects.)

Thus the Magistrate Judge concludes that Plaintiffs' negligence claim, as set forth in their Third Amended Complaint and Separate Statement of Facts, is an attempt to circumvent contract remedies by re-casting their contract claims against WSP as tort claims against Hosack and Desert Vista.  As such, the claim is barred, as a matter of law, by the economic loss rule.[5]

**B.      Plaintiffs' Third Amended Complaint should be dismissed with prejudice**.

Because the economic loss doctrine bars Plaintiffs' recovery in tort against Hosack and Desert Vista, this Court recommends that the District Court dismiss Hosack and Desert Vista from this action.  In their response to the Motion for Summary Judgment, Plaintiffs argue that if the economic loss doctrine bars their recovery in tort, they should be granted leave to amend their complaint in order to state a third-party beneficiary contract claim against Hosack and Desert Vista.  The Magistrate Judge recommends that Plaintiffs' request for leave to amend be denied, and that the dismissal of Hosack and Desert Vista be *with prejudice*.   This is the fourth complaint filed by Plaintiffs in this case.  Plaintiffs were on notice that their negligence claim could potentially be barred by the economic loss rule prior to the filing of their Third Amended Complaint, but declined to plead any alternative claims.  (DCSOF 1.)  The District Court's September 8, 2008 Order permitting the filing of a Third

---

[5] Although Defendants Hosack and Desert Vista did not challenge the Court's subject matter jurisdiction, the Court may consider the issue of subject matter jurisdiction at any time and must dismiss an action if it determines that subject matter jurisdiction is lacking.  *See* Rule 12(h)(3), Fed. R. Civ. P.  For the reasons stated in this Report and Recommendation recommending that the District Court grant the motions to dismiss filed by Defendants Parkhurst, Mason, Sack, and Long Realty (Doc. No. 171), Defendants are also entitled to dismissal of Plaintiffs' negligence claims because the Court lacks supplemental jurisdiction over the claim.

1    Amended Complaint cautioned Plaintiffs that "repeated attempts to amend the complaint may

2    be disfavored as continually amending complaints often slows down a plaintiff's case and

3    may cause other problems."  (Doc. No. 133.)  Further amendment of Plaintiffs' complaint

4    would result in undue delay and prejudice to the opposing party.  *See Bonin v. Calderon*, 59

5    F.3d 815, 845 (9th Cir.1995) ("In deciding whether to grant leave to amend, courts are

6    guided by five factors: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4)

7    futility of the amendment; and (5) whether the party previously amended its pleadings.

8    Futility alone can justify the denial of a motion for leave to amend.")[6]

9    **C.   Defendants Hosack and Desert Vista seek an award of attorneys' fees pursuant to A.R.S. § 12-349.**

10

11          Hosack and Desert Vista seek an award of attorneys' fees in this case pursuant to

12   A.R.S. § 12-349, which permits the court to assess attorneys' fees against a party who brings

13   or defends a claim without substantial justification. A claim is "without substantial

14   justification" if it constitutes harassment, is groundless and is not made in good faith.  *See*

15   A.R.S. § 12-349(E).  The Magistrate Judge does not recommend an award of attorneys' fees

16   in this case.  In order to award attorneys' fees pursuant to A.R.S. § 12-349, the court must

17   find that each of the three elements identified in A.R.S. § 12-349(E) is present and proven

18   by a preponderance of the evidence, with the absence of even one element rendering the

19   statute inapplicable. *See City of Casa Grande v. Ariz. Water Co.*, 20 P.3d 590, 598

20   (App.2001).  Hosack and Desert Vista have not presented any evidence to suggest that

21   Plaintiffs pursued their negligence claim against Hosack and Desert Vista for purposes of

22   harassment.  Moreover, given that the Ninth Circuit recently observed that "outside the

23

24          [6] In addition, the Court suspects that amendment of the complaint in order for Plaintiffs'
     to allege that they were third party beneficiaries of the contract between WSP and Hosack/Desert
25   Vista would be futile.  In order to recover as a third party beneficiary of a contract, three
     elements must be present: (1) the contract must indicate an intention to benefit the third party
26   beneficiary, (2) the contemplated benefit must be both intentional and direct, and (3) it must be
     clear that the parties intended to recognize the third party as the primary party in interest. *Norton*
27   *v. First Fed. Sav.*, 624 P.2d 854, 856 (Ariz. 1981).  Throughout the course of these proceedings,
     the Court has not seen any allegation or evidence suggesting that when WSP contracted with
28   Hosack/Desert Vista for engineering of the tentative and final plat for the Enclave, the parties
     intended Plaintiffs to be the primary party in interest.

1   product liability context, the [economic loss] doctrine has produced difficulty and

2   confusion," *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 874 (9th Cir. 2007), it is

3   not evident that Plaintiffs pursued their argument against application of the economic loss

4   doctrine in bad faith.[7]

5                                          **RECOMMENDATION**

6          The Magistrate Judge recommends the District Court, after is independent review of

7   the record, enter an order GRANTING the Motion for Summary Judgment filed by

8   Defendants Hosack and Desert Vista on December 3, 2008 (Doc. No. 152) and

9   DISMISSING WITH PREJUDICE the claims alleged against Defendants Hosack and Desert

10  Vista.

11         Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections within

12  10 days of being served with a copy of this Report and Recommendation.  If objections are

13  not timely filed, they may be deemed waived.  If objections are filed, the parties should use

14  the following case number: **CV-08-09-TUC-FRZ.**

15         DATED this 6th day of May, 2009.

16

17

18

19

20

21

22

23

24                                          _____
                                                       Jennifer C. Guerin
25                                            United States Magistrate Judge

26

27   _____

28   [7] Hosack and Desert Vista made their request for attorneys' fees in their Reply.  Thus, Plaintiffs were not given an opportunity to respond to the request.

- 12 -