IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Armando Valles, et al.,<br><br>    Plaintiff,<br><br>vs.<br><br>Pima County, et al.,<br><br>    Defendant. | CV-08-00009-TUC-FRZ (JCG)<br><br>**AMENDED<br>REPORT & RECOMMENDATION<br>RE: MOTIONS TO DISMISS<br>BY DEFENDANTS PARKHURST,<br>SACK AND LONG REALTY,<br>AND MASON** |

    Three motions are pending before the Court. On November 26, 2008, Defendant Parkhurst Construction, LLC ("Parkhurst") filed a Motion to Dismiss. (Doc. No. 149.) Plaintiffs filed a response on December 10, 2008 (Doc. No. 157) and Defendant timely replied. (Doc. No. 161.)

    Defendants Richard A. Sack ("Sack") and Roy H. Long Realty Company, Inc. ("Long Realty") filed a Motion to Dismiss on November 10, 2008. (Doc. No. 137.) Plaintiffs filed a response to the Motion on November 24, 2008 (Doc. No. 147) and Defendants timely replied. (Doc. No. 159.)

    Finally, on November 28, 2008, Defendant David A. Mason ("Mason") filed a Motion to Dismiss. (Doc. No. 151.) Plaintiffs filed a response on December 12, 2008 (Doc. No. 160) and supplemented their response on December 18, 2008. (Doc. No. 162.) Defendant Mason timely replied. (Doc. No. 165.)

Pursuant to the Rules of Practice in this Court, these matters were assigned to Magistrate Judge Guerin for a report and recommendation. (Doc. No. 37.) After review, the Magistrate Judge recommends the District Court, after its independent review of the record, enter an order granting Defendants' Motions.

## PROCEDURAL BACKGROUND

Plaintiffs initiated this action against fourteen Defendants on January 3, 2008. (Doc. No. 1.) Plaintiffs were granted leave to amend their complaint and filed their First Amended Complaint on March 11, 2008. (Doc. No. 33.) Numerous defendants filed motions to dismiss Plaintiffs' First Amended Complaint. While those motions were pending, the Court granted Plaintiffs leave to file their Second Amended Complaint, which Plaintiffs filed on August 11, 2008. (Doc. Nos. 126, 127.) On August 29, 2008, the Court dismissed two Defendants – West Speedway Partners, LLC and The Villas at Hacienda del Sol, Inc. (Doc. No. 130.) On September 8, 2008, the Court dismissed the remaining motions to dismiss as moot in light of the filing of Plaintiffs' Second Amended Complaint. (Doc. No. 133.) The Court further noted that "this case may be streamlined by allowing Plaintiffs to file a Third Amended Complaint." (*Id.*) Plaintiffs filed their Third Amended Complaint on October 24, 2008. (Doc. No. 136.)

Plaintiffs' Third Amended Complaint alleges claims against Defendants Pima County, Mason, Thomas E. Hosack, P.E. ("Hosack"), Desert Vista Engineering, LLC ("Desert Vista"), Sack and Long Realty. (Doc. No. 136.) Motions to dismiss Plaintiffs' Third Amended Complaint have been filed by Defendants Parkhurst, Mason, Sack and Long Realty. (Doc. Nos. 137, 149 and 151.) Defendants Hosack and Desert Vista have filed a Motion for Summary Judgment. (Doc. No. 152.) Defendant Pima County has answered the Third Amended Complaint. (Doc. No. 150.)[1]

---

[1] The pending Motions to Dismiss and Motion for Summary Judgment relating to Plaintiffs' Third Amended Complaint present similar arguments in favor of dismissal and the parties have incorporated each others' pleadings by reference. Accordingly, the Court hereby incorporates by reference its Report and Recommendations concerning the other pending Motions.

- 2 -

**FACTS RELATING TO DEFENDANT PARKHURST**

According to Plaintiffs' Third Amended Complaint, Defendant Parkhurst is an Arizona Limited Liability Company registered by the Registrar of Contractors as a specialty residential contractor for excavating, grading and oil surfacing. (Doc. No. 136, ¶¶ 16, 109.) Parkhurst was engaged in the construction of subdivision improvements for residential properties purchased by Plaintiffs in a subdivision named The Enclave at Gates Pass ("the Enclave"). According to Plaintiffs, Parkhurst failed to construct those improvements in accordance with benchmark elevations set forth in the Final Plat for the Enclave (*id*. at ¶ 111) and called for the installation of utility lines without an engineer's certification of the grade of the roads and trenches within the Enclave. (*Id*. at ¶ 111.)  Plaintiffs also allege that Parkhurst refuses to release invalid mechanic's liens on the Plaintiffs' lots, thereby clouding Plaintiffs' titles to their properties. (*Id.* at ¶ 112.) Plaintiffs have alleged a claim for negligence against Parkhurst.

**FACTS RELATING TO DEFENDANTS SACK, LONG REALTY AND MASON**

According to Plaintiffs' Third Amended Complaint, Mason was an employee of West Speedway Partners, LLC ("WSP"), the property development company that sought to subdivide and develop the Enclave. (Doc. No. 136, ¶¶ 21-23, 98.) Mason was in control of the daily operations of the construction of the subdivision improvements for the Enclave. (*Id*. at ¶ 98.) According to Plaintiffs, Mason directed grading of the Enclave to begin prior to the approval of the Final Plat for the Enclave, caused the utilities to be laid prior to the engineer's certification of the grade, and insisted another contractor attempt to correct the grade/cuts after the utility lines were laid. (*Id*. at ¶ 99.)

Pima County approved a Final Plat for the Enclave on January 7, 2004. (*Id*. at ¶ 23.) The Initial Assurance document identified on the Final Plat required WSP to substantially complete all subdivision improvements prior to conveying title to any of the lots within the Enclave on or about November 18, 2007. (*Id*. at ¶ 27.) On December 2, 2004, a Substitute Assurance document was executed by Pima County and Defendant Mason as an authorized member of WSP. (*Id*. at ¶ 30.) The Substitute Assurance Agreement allowed the Enclave

1   lots to be sold prior to substantial completion of the improvements and was secured by a
2   $696,813 performance bond naming Pima County as the beneficiary.[2]  According to
3   Plaintiffs, Pima County failed to record the Substitute Assurance Agreement, and WSP failed
4   to provide notice of the Substitute Assurance to the purchasers of the Enclave lots.  (*Id.* at
5   ¶ 31.)

6         Sack is a licensed Arizona real estate broker, employed by Long Realty, who
7   represented WSP in its sales of Enclave lots to Plaintiffs. (Id. at ¶ 17.)  Between December
8   2004 and early 2005, Plaintiffs purchased lots within the Enclave.  At the time of purchase,
9   WSP provided Plaintiffs with a public report referencing the Initial Assurance document and
10  stating that improvements would be complete on or before February 28, 2005.  (*Id.* at ¶ 28.)
11  Mason and/or Sack represented to Plaintiffs that subdivision improvements were
12  substantially complete and demanded that Plaintiffs close escrow.  (*Id.* at ¶ 32, 33.)  Mason
13  and Sack negotiated, executed and delivered Purchase Contracts to each of the Plaintiffs
14  which expressly incorporated the Initial Assurance Agreement and advised that a pre-
15  condition to close of escrow would be the "substantial completion" of subdivision
16  improvements.  (*Id.* at ¶ 34.)  Mason and Sack also published a letter to each Plaintiff from
17  Mason stating that it was time for each Plaintiff to close escrow because the improvements
18  were substantially complete.  (*Id.* at ¶ 35.)  Some of the Plaintiffs claim that they felt
19  pressured by Sack to close escrow on their Enclave lots because the improvements were
20  substantially complete.  (*Id.* at 36.)  Plaintiffs allege that Mason and Sack engaged in a
21  concerted effort to induce Plaintiffs into closing escrow for their Enclave lots before the
22  improvements were substantially complete.  (*Id.* at ¶ 93.)

23        According to Plaintiffs, Mason and Sack knew or should have known at the time of
24  sale that WSP was permitted to sell the lots pursuant to the Substitute Assurance Agreement,
25  and not because the improvements were substantially complete as required by the Initial

---

[2] Plaintiffs allege that this bond was personally guaranteed by Mason. (Doc. No. 136, ¶ 30). However, review of the bond – attached to Plaintiffs' Third Amended Complaint – does not support this assertion. (Doc. No. 136, Ex. F.)

Assurance Agreement. (*Id.* at ¶¶ 37, 92.)  Mason and Sack also knew or should have known that the improvements were not complete and would have to be reconstructed because they had been improperly graded. (*Id.* at ¶¶ 26, 38, 39, 92.)  Plaintiffs closed escrow on their lots in the Enclave in reliance on the assurances of Mason and Sack. (*Id.* at ¶ 40, 41.)  WSP failed to construct the subdivision improvements in a timely manner and filed for bankruptcy on December 15, 2006. (*Id.* at ¶ 44.)  In their Third Amended Complaint, Plaintiffs have alleged a state law claim for misrepresentation[3] against Mason, Sack and Long Realty.  Plaintiffs have also alleged a state law negligence claim against Mason and Sack.[4]  (*Id.* at pgs. 23-26.)

On November 11, 2008, Sack and Long Realty moved to dismiss the claims alleged against them pursuant to Rules 9(b), 12(b)(1)[5] and 12(b)(6), Fed. R. Civ. P.  On November 28, 2008, Mason moved to dismiss the claims alleged against him pursuant to Rules 9(b), 12(b)(1) and 12(b)(6), Fed. R. Civ. P.  Defendants Mason, Sack and Long Realty contend that Plaintiffs' Third Amended Complaint should be dismissed because: (1) supplemental jurisdiction does not exist under 28 U.S.C. § 1367, and (2) Plaintiffs' misrepresentation claim has not been pled with particularity.  In addition, Defendants Sack and Long Realty argue that Plaintiffs have failed to comply with A.R.S. §§ 12-2601 *et seq.*, and Defendant Mason contends that Plaintiffs' negligence claim is barred by the economic loss doctrine.

---

[3] Plaintiffs' Third Amended Complaint captions the misrepresentation claim as a "misrepresentation/mistake"claim. (Doc. No. 136, pg. 23.) Because mistake is not a legal claim but a legal defense, the Court refers to this claim as a claim for misrepresentation.

[4] Although Plaintiffs allege that Long Realty is vicariously liable for the acts and/or omissions of its employee, Sack, Plaintiffs allege only their misrepresentation claim against Long Realty. The negligence claim is alleged solely against Mason and Sack. (Doc. No. 136, pgs. 23-26.)

[5] Defendants cite to Rule 12(h)(3), Fed. R. Civ. P. as the rule regarding dismissal for lack of subject matter jurisdiction. However, given the current procedural posture of this case, Rule 12(b)(1) applies.

1    On November 26, 2008, Parkhurst moved to dismiss the negligence claim against it
2 pursuant to Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P.  Defendant Parkhurst contends that
3 Plaintiffs' Third Amended Complaint should be dismissed because: (1) supplemental
4 jurisdiction does not exist under 28 U.S.C. § 1367; (2) Plaintiffs have failed to state a claim
5 for negligence; (3) Plaintiffs' negligence claim is barred by the economic loss doctrine; (4)
6 Plaintiffs' allegations regarding Parkhurst's mechanic's lien have no basis in law or fact; (5)
7 Plaintiffs' negligence claim is barred by the statute of limitations and (6) Plaintiffs have
8 failed to comply with the requirements of A.R.S. § 12-2601, *et seq*.

9    No oral argument was heard on the Motions. *See Mahon v. Credit Bureau of Placer
10 County, Inc.,* 171 F.3d 1197, 1200 (9th Cir. 1999) (explaining that if the parties provided the
11 district court with complete memorandum of law and evidence in support of their positions,
12 ordinarily oral argument would not be required).

## DISCUSSION

In this Report and Recommendation, the Magistrate Judge recommends that the District Court find that supplemental jurisdiction is not appropriate under 28 U.S.C. § 1367. Because this finding would be  dispositive of the negligence claim against Parkhurst and the negligence and misrepresentation claims against Mason, Sack and Long Realty, the Report and Recommendation does not consider the Defendants' additional arguments for dismissal.[6]

**A.    Standard of Review**

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for motions to dismiss for lack of subject matter jurisdiction. The burden of proof on a Rule 12(b)(1) motion to

---

[6]The Magistrate Judge notes, however, that Defendant Parkhurst would also be entitled to dismissal of Plaintiffs' Third Amended Complaint because the economic loss doctrine bars Plaintiffs' negligence claims.  The basis for this recommendation is set forth in the Report and Recommendation, recommending that the District Court grant the motion for summary judgment filed by Hosack and Desert Vista (Doc. No. 172), which was filed simultaneously with this Report and Recommendation. Plaintiffs' negligence claim against Parkhurst, like their negligence claim against Hosack and Desert Vista, is essentially an attempt to re-cast as a tort claim a contract claim arising from an alleged construction defect.

- 6 -

dismiss is on the party asserting jurisdiction. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). On a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the court is not "restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir.1988).

**B.    This Court lacks supplemental jurisdiction over Plaintiffs' negligence and misrepresentation claims**.

Plaintiffs allege that this Court has jurisdiction over the pending action pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction), 1343 (federal civil rights jurisdiction) and 1367 (supplemental jurisdiction). Because Plaintiffs have not alleged any federal claims against Parkhurst, Mason, Sack or Long Realty, the Court does not have supplemental jurisdiction over Plaintiffs' state law claims against these Defendants unless the requirements of 28 U.S.C. § 1367 have been met.

28 U.S.C. § 1367(a) provides:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction *over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy* under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

(Emphasis added.) A state law claim is part of the same case or controversy when it shares a "common nucleus of operative fact" with the federal claims and the state and federal claims would normally be tried together." *Bahrampour v. Lampert*, 356 F.3d 969, 978 (9th Cir. 2004) *(internal citations omitted)*; *see Stevedoring Services of America, Inc. v. Eggert*, 953 F.2d 552 (9th Cir. 1992) (*citing S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1091 (9th Cir.1989)) (pendent claims must derive from a nucleus of operative fact held in common with claims for which there is an independent basis for federal jurisdiction, and they must be such that they ordinarily would be expected to be tried in a single proceeding with the federal claims).

**1.    Federal claims alleged against Pima County**.

Plaintiffs allege that their negligence and misrepresentation claims alleged against Parkhurst, Mason, Sack and Long Realty arise from the same case or controversy as the federal claims they have alleged against Defendant Pima County. In their Third Amended Complaint, Plaintiffs allege that Pima County unconstitutionally applied the law while regulating development and construction of the Enclave. Specifically, Plaintiffs allege that Pima County:  (1) negligently approved the Final Plat for the Enclave without noticing elevation flaws in the plans; (2) permitted grading of the subdivision before the Final Plat was approved; (3) accepted inadequate security for a Substitute Assurance Agreement entered into between Pima County and the developer of the Enclave, West Speedway Partners ("WSP"); (4) failed to record the Substitute Assurance agreement; (5) failed to enforce the Substitute Assurance agreement; (6) refused to call the bond securing the Substitute Assurance Agreement or otherwise undertake steps to ensure completion when improvements to the subdivision were not completed in a timely manner,[7] and (7) refused to allow Plaintiffs to obtain permits or otherwise use their properties until the subdivision improvements are completed.  (Doc. No. 136 at ¶¶ 25, 31, 43, 45, 62, 69, 75 and 82.) Plaintiffs have alleged a 5th Amendment takings claim and a 14th Amendment substantive due process claim against Pima County, as well as state law claims for gross negligence and promissory estoppel.

**2.    Plaintiffs' negligence claim alleged against Parkhurst does not share a common nucleus of fact with the federal claims alleged against Pima County**.

Plaintiffs' negligence claims against Parkhurst do not derive from a nucleus of operative fact common to Plaintiffs' 5th and 14th Amendment claims against Pima County such that the Court should exercise supplemental jurisdiction. Application of supplemental jurisdiction to the negligence claims would stretch the scope of the statute beyond its

---

[7] WSP failed to complete construction of the Enclave and eventually filed for bankruptcy on December 15, 2006. (Doc. No. 136, ¶ 44.) The improvements to the Enclave remain incomplete. (Id. at ¶ 48.)

constitutional limits.[8] This is not a case in which a plaintiff has alleged both a federal and a state law claim against a defendant whose singular conduct violated the laws of both jurisdictions. *See White v. County of Newberry, S.C.*, 985 F.2d 168 (4th Cir. 1993) (exercising supplemental jurisdiction over state law takings claim against County where federal jurisdiction arose under CERCLA claim against County, because both claims required a showing by plaintiffs that the County engaged in the dumping or disposal of TCE in a manner that caused contamination to the plaintiffs' well); *see also Fallar v. Compuware Corp.*, 202 F.Supp.2d 1067, 1071 n.1 (D. Ariz. 2002) (noting its original jurisdiction over plaintiff's federal ADA claim and its supplemental jurisdiction over claim arising under the Arizona Civil Rights Act). Nor is this a case in which numerous defendants are alleged to have worked in concert to commit acts which caused indivisible harm, proof of which establishes liability under both federal and state law. *See In re Methyl Tertiary Butyl Ether (""MTBE") Products Liability*, 510 F.Supp.2d 299, 325 (S.D.N.Y. 2007) (exercising supplemental jurisdiction over state law claims alleged against defendants because the claims required similar proof as the federal claims alleged against those same defendants, such as when the defendants knew of the dangers of MTBE and whether MTBE caused harm).

Instead, Plaintiffs in this case seek to assert a variety of state and federal claims against a wide spectrum of defendants allegedly involved in a far-reaching span of events that allegedly caused various harms to Plaintiffs. As such, Plaintiffs case is more akin to *Classic Communications, Inc. v. Rural Telephone Service Co., Inc.*, 995 F.Supp. 1181 (D. Kan. 1998). In *Classic Communications*, a telephone company plaintiff sought to enter into new markets in western Kansas. The plaintiff sued numerous Kansas cities and a telephone company competitor already operating in those cities, alleging that the cities and the competitor conspired to exclude the plaintiff from those markets. The district court concluded that it had original jurisdiction over the plaintiff's Lanham Act claim against the

---

[8] The 1998 comments to 28 U.S.C. § 1367 state that "case or controversy" language used in the statute is a reference to the Constitution's own statement of the outer limits of federal jurisdiction.

1 competitor, in which Plaintiff alleged that the competitor engaged in a direct marketing
2 campaign making defamatory statements about the plaintiff's products, services and
3 commercial activities. The district court found that it did not have supplemental jurisdiction
4 over the plaintiff's state law anti-trust claim against both the cities and the competitor, in
5 which plaintiff alleged that the defendants conspired to deny plaintiff the opportunity to
6 compete in the telephone business. The court reasoned that "[n]otwithstanding plaintiffs'
7 argument that the claims both relate to plaintiffs' frustrated efforts to expand into western
8 Kansas, the factual findings required under the respective state and federal laws are too
9 divergent to properly allow the exercise of supplemental jurisdiction." *Id*. at 1184; *see also*
10 *Kirschner v. Klemons*, 225 F.3d 227, 239 (2d Cir. 2000) (finding no supplemental
11 jurisdiction over defendant who had contributed to harm suffered by plaintiff because the
12 facts establishing liability were distinct from the facts establishing liability for federal claim
13 alleged against other defendant).

14 Similarly, in this case, each of the claims in Plaintiffs' action relates to Plaintiffs'
15 frustrated efforts to receive the full value of the lots they have purchased in the Enclave.
16 However, it is not enough that the various defendants were all somehow involved in
17 development and/or construction of the Enclave; nor it is enough that Plaintiffs believe these
18 parties contributed to their alleged harms. *See Didzerekis v. Stewart*, 41 F.Supp.2d 840, 850
19 (N.D.Ill. 1999) (finding no supplemental jurisdiction over state law wrongful death action
20 against husband who killed his wife, where original jurisdiction stemmed from section 1983
21 action against police who allegedly failed to timely respond to the wife's 911 call on the
22 night of the murder). Review of the operative facts relevant to Plaintiffs' federal claims
23 against Pima County and state law claim against Parkhurst demonstrates that the claims are
24 as divergent as the claims at issue in *Classic Communications*, and therefore supplemental
25 jurisdiction does not exist.

26 In order to succeed on their Takings Clause claim against Pima County, Plaintiffs
27 must demonstrate that the County has (1) taken the landowner's property by imposing
28

- 10 -

regulations that go too far (2) without tendering just compensation for the taking.[9]  *See Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 920 F.2d 1496, 1500 (9th Cir. 1990). In order to prevail on a claim for violation of substantive due process, Plaintiffs must demonstrate that Pima County engaged in arbitrary and irrational conduct that deprived Plaintiffs of a legally cognizable interest in their real property. *See Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 542 (2005). Based on these legal frameworks and the allegations of Plaintiffs' complaint, Plaintiffs' federal claims against Pima County will require evidence related to the proposed plat submitted to Pima County, Pima County's negotiations with WSP prior to the sale of the lots, Pima County's alleged duties to purchasers of Enclave lots following purchase, and Pima County's actions following WSP's failure to complete the subdivision.

None of the proof required to establish liability against Pima County involves Parkhurst. In order to prevail on their negligence claim against Parkhurst, Plaintiffs must demonstrate that Parkhurst owed a duty to Plaintiffs, the duty was breached, the breach proximately caused an injury, and the injury resulted in actual damages. *See Ontiveros v. Borak*, 136 Ariz. 500, 505, 667 P.2d 200, 205 (1983)). Based on this legal framework and the allegations of Plaintiffs' complaint, Plaintiffs' negligence claim against Parkhurst will require evidence related to whether Parkhurst owed a duty to Plaintiffs, whether Parkhurst

---

[9] It is unclear whether Plaintiffs can sustain claims for both a 5th Amendment taking and a violation of substantive due process. The court in *Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1026 n.1 (9th Cir. 2007) explains the distinction between substantive due process and Takings Clause claims:"[The Takings Clause] 'is designed not to limit the governmental interference with property rights *per se*, but rather to secure compensation in the event of otherwise proper interference....' Due process violations cannot be remedied under the Takings Clause, because 'if a government action is to be found impermissible-for instance because it fails to meet the 'public use' requirement or is so arbitrary as to violate due process-that is the end of the inquiry. No amount of compensation can authorize such action.' " Because Plaintiffs' claim alleges improper regulatory conduct by the County, the Takings Clause may not provide an appropriate cause of action. Conversely, if Plaintiffs demonstrate that the County's regulatory conduct was proper but imposed too great a burden on Plaintiffs, then Plaintiffs cannot sustain a claim for substantive due process.

1 constructed its improvements in a workmanlike manner, whether Parkhurst's construction
2 complied with the benchmark elevations set forth in the Final Plat, whether Parkhurst
3 prematurely called for installation of utility lines, and whether Parkhurst improperly clouded
4 Plaintiffs' title by recording mechanics' liens against the Enclave lots.

5 There is insufficient factual overlap between Plaintiffs' federal claims against Pima
6 County and its negligence claim against Parkhurst to conclude that the federal and state
7 claims would ordinarily be tried in a single proceeding. Although Plaintiffs contend that
8 Pima County and Parkhurst were both a part of the same chain of events, they were involved
9 in different links of the chain. Pima County allegedly acted arbitrarily in regulating the
10 planning and development of the Enclave at its inception and again in ensuring completion
11 of the project following WSP's default of its development obligations. Parkhurst allegedly
12 constructed some of the deficient infrastructure under WSP's direction prior to WSP's
13 default. As Parkhurst points out, the *operative facts* related to defendant Pima County and
14 Parkhurst are not related and the determination of these facts would require resolution of
15 different questions. Factual issues relating to the federal claims against Pima County
16 include: did Pima County approve a deficient plat? Were the assurances agreed to by WSP
17 and Pima County adequate? Should Pima County have called the bond after WSP failed to
18 timely construct the improvements? Would the bond have provided adequate funding to
19 complete the project? These questions do not involve Parkhurst at all. Similarly, the
20 *operative facts* and factual questions related to the negligence claim against Parkhurst
21 include: what construction work did Parkhurst perform? Was it performed in a workmanlike
22 manner? Did Parkhurst prematurely call for installation of utility lines? Was it improper for
23 Parkhurst to record mechanics' liens on the lots? These factual issues provide little insight
24 into the facts needed to prove the claims alleged against Pima County. Although both sets
25 of claims may involve testimony from some of the same witnesses, the testimony will
26 concern different subject matter. Although both sets of claims may involve some of the same
27 construction documents, the documents will be relevant for different reasons. *See Chelsea*
28 *Condominium Unit Owners Ass'n v. 1815 A. St., Condominium Group*, 468 F.Supp.2d 136,

1  142 (D.D.C. 2007) (finding no supplemental jurisdiction over state law claims alleging
2  misrepresentations made during the marketing of condominiums for sale where federal law
3  claims alleged failure to disclose conflict of interest during closings of sales of those same
4  condominiums).

5        **3.    Plaintiffs' negligence and misrepresentation claims alleged against Mason, Sack and Long Realty do not share a common nucleus of fact with the federal claims alleged against Pima County**.

7       Similarly, none of the operative facts relevant to the federal claims against Pima
8  County are at issue in the misrepresentation or negligence claims alleged against Mason,
9  Sack and Long Realty. Both the misrepresentation claim and the negligence claim alleged
10 against Mason and Sack arise from Mason's and Sack's alleged actions in the sale of the
11 Enclave lots.[10] The two state law claims appear to be pled in the alternative. According to
12 Plaintiffs, Mason and Sack induced them to purchase lots in the Enclaves by assuring them
13 the lots were substantially complete. Plaintiffs allege that either Mason and Sack knew at
14 the time of sale that the improvements were not substantially complete, in which case Mason
15 and Sack are potentially liable for misrepresentation, or Mason and Sack should have known
16 that the improvements were not substantially complete, in which case Mason and Sack are
17 potentially liable for negligence. Proof of either claim will focus on operative facts related
18 to whether Mason and Sack communicated with each of the Plaintiffs regarding the status
19 of the improvements at the time of sale, and what Mason and Sack knew about the status of
20 the improvements when that communication occurred. Regardless of the County's regulation
21 of the development, the state law claims against Mason, Sack and Long Realty stand or fall
22 based on what was done or said during the interactions between Plaintiffs and these

---

[10] It appears that Plaintiffs may also be alleging that Mason was negligent in his management of the grading work performed during construction of the Enclave lot. (Doc. No. 136, ¶ 99.) To the extent Plaintiffs have stated such a claim, the Court would lack supplemental jurisdiction over it as well. Whether Mason owed a duty to Plaintiffs to manage the construction work with reasonable care, and whether he breached that duty by prematurely calling for grading and utility line installation, does not involve Pima County in any way.

- 13 -

individual defendants. Conversely, none of the communications between Mason, Sack and the Plaintiffs would have any operative significance on the regulatory policies adopted and implemented by Pima County.

Furthermore, as Defendants Sack and Long Realty point out in their Motion, the claims against Sack, Mason and Long Realty are distinct, separate claims alleged by each individual Plaintiff against each of these defendants. According to the Complaint, Plaintiffs purchased their lots at separate times over a several month-long period. (Doc. No. 136, ¶ 28.) Each Plaintiff must present evidence regarding what each believed at the time of closing, what communication each had with Mason and Sack, and whether each individual Plaintiff's alleged reliance was reasonable given that individual's circumstances and the state of construction at that time. As such, the state law claims against Mason, Sack and Long Realty are intensely factual. The federal claims against the County, conversely, are almost purely legal: they depend upon what regulations the County enacted and whether those regulations amounted to a deprivation of a constitutionally-protected property interest. Given this disparity between the amount and nature of the evidence relevant to the state law claims against Mason, Sack and Long Realty and the unusual legal issues related to the federal claims alleged against Pima County, trying these cases jointly would not be reasonable or logical. Thus, even if the Court were to conclude that there is supplemental jurisdiction, which it does not, it would be prudent to decline to exercise such jurisdiction in these circumstances. *See* 28 U.S.C. § 1367(c) (a court may decline jurisdiction over a supplemental state law claim if the claim substantially predominates over the claims over which the district court has original jurisdiction).

**C.    Declination of Plaintiffs' Request for Exercise of Supplemental Jurisdiction.**

Plaintiffs contend that this Court should exercise its discretion and assume supplemental jurisdiction over Plaintiffs' state law claims because they have incurred significant costs litigating this matter in federal court and it would be burdensome for Plaintiffs to re-assert their claims in state court. As a threshold matter, as noted above, the Court does not have discretion to adopt supplemental jurisdiction where it does not exist

1 under the requirements of 28 U.S.C. § 1367.  Furthermore, the equities do not weigh in
2 Plaintiffs favor on this issue.  "A plaintiff [who voluntarily files in federal court] cannot
3 complain if ancillary jurisdiction does not encompass all of his possible claims in a case such
4 as this one, since it is he who has chosen the federal rather than the state forum and must thus
5 accept its limitations." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 376
6 (1978).  Morever, the Court notes that although this case has been pending for over one year,
7 it has not progressed beyond the pleading stage due to Plaintiffs' repeated amendment of
8 their complaint.  The procedural history of this case does not weigh in Plaintiffs' favor with
9 respect to the respective financial burdens borne by the parties to date.

**D.  Plaintiffs' Third Amended Complaint against Defendants should be dismissed without prejudice.**

Because the Court does not have supplemental jurisdiction over Plaintiffs' state law claims alleged against Defendants Parkhurst, Mason, Sack and Long Realty, the Magistrate Judge recommends that the District Court dismiss these Defendants from this action. Generally, dismissal for lack of subject matter jurisdiction should be without prejudice so that the plaintiff may reassert his or her claim in a competent court. *See Frigard v. United States*, 862 F.2d 201, 204 (9th Cir.1988).  Plaintiffs should be advised, however, that a dismissal without prejudice of their state law claims should not be regarded as grounds for requesting in this Court leave to amend to cure the deficiencies in their Third Amended Complaint.  It does not appear that Plaintiffs can amend their Complaint to cure the jurisdictional defect discussed in this Report and Recommendation. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir.1995) ("In deciding whether to grant leave to amend, courts are guided by five factors: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of the amendment; and (5) whether the party previously amended its pleadings. Futility alone can justify the denial of a motion for leave to amend.")  Furthermore, this is the fourth complaint filed by Plaintiffs in this case, and the District Court's September 8, 2008 Order permitting the filing of a Third Amended Complaint cautioned Plaintiffs that "repeated attempts to amend the complaint may be disfavored as continually amending

complaints often slows down a plaintiff's case and may cause other problems." (Doc. No. 133.)

**RECOMMENDATION**

In conclusion, the Magistrate Judge recommends the District Court, after its independent review of the record, enter an order GRANTING the Motion to Dismiss filed by Parkhurst on November 26, 2008 (Doc. No. 149) and DISMISSING WITHOUT PREJUDICE the action against Defendant Parkhurst.

The Magistrate Judge further recommends the District Court, after its independent review of the record, enter an order GRANTING the Motion to Dismiss filed by Defendants Sack and Long Realty on November 10, 2008 (Doc. No. 137); GRANTING the Motion to Dismiss filed by Mason on November 28, 2008 (Doc. No. 151); and DISMISSING WITHOUT PREJUDICE the action against Defendants Sack, Long Realty and Mason.

Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections within 10 days of being served with a copy of this Report and Recommendation. If objections are not timely filed, they may be deemed waived. If objections are filed, the parties should use the following case number: **CV-08-09-TUC-FRZ.**

DATED this 7th day of May, 2009.

_____
Jennifer C. Guerin
United States Magistrate Judge